In re Billie Lamont **GARDNER**, Debtor.

**Terryl A. GARDNER, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant,**

**and**

**William H. Zimmerman, Jr., Trustee, Defendant.**

No. 89–3209.

United States Court of Appeals, Tenth Circuit.

Sept. 18, 1990.

**1516**

J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, Wichita, Kan., for plaintiff-appellee.

Kimberly S. Stanley, Atty. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, William S. Estabrook, Attorneys, Tax Div., Dept. of Justice) (Benjamin L. Burgess, Jr., U.S. Atty., of counsel), Washington, D.C., for defendant-appellant.

Before MOORE, BRIGHT,* and BRORBY, Circuit Judges.

PER CURIAM.

Defendant-appellant United States of America appeals from an order of the dis-

---

* Honorable Myron H. Bright, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

trict court affirming a bankruptcy court order holding that the tax lien on the vested, indeterminate interest in property of debtor Billie L. Gardner was extinguished by an award of the property to plaintiff-appellee Terryl A. Gardner in a state court divorce proceeding and that Mrs. Gardner's interests in the property were superior to those of the United States. 101 B.R. 654 (D.Kan.1989). We affirm the determination that Mr. Gardner had no interest in the marital property after the final divorce decree and remand for dismissal for lack of jurisdiction the bankruptcy court's determination and district court's affirmance that Mrs. Gardner's interests were superior to those of the government.

The facts in this case either were stipulated or are undisputed. On January 22, 1985, Mrs. Gardner commenced divorce proceedings in Kansas state court. The Internal Revenue Service filed a tax lien against Mr. Gardner on August 4, 1986.[1] Two days later, Mr. Gardner filed for bankruptcy under Chapter 7. On September 19, 1986, the bankruptcy court lifted the automatic stay to allow the divorce proceedings, including division of property, to continue, but cautioned that any division of property would not be conclusive as to the bankruptcy trustee. On January 12, 1987, the divorce court entered a decree of divorce, awarding nearly all of the property to Mrs. Gardner. At that time, all but the exempt property was held by the trustee.

Mrs. Gardner brought an adversary action against the bankruptcy trustee on February 2, 1988, to obtain the bankruptcy estate property awarded to her in the divorce action. Defining the action as a conflict over ownership rights of property rather than a controversy concerning priorities, the bankruptcy court determined that Mr. Gardner had a "vested but an as yet undetermined ownership interest" in all marital property at the time of commencement of the divorce action. The entry of the divorce decree, however, served to divest any interest Mr. Gardner had in the property. Because the state court divested

Mr. Gardner's interest in th^ property by entry of the final divorce decree, the bankruptcy court held that any interest the government claimed to the property as a result of the tax lien was extinguished.

The government appealed to the district court raising issues relating to the bankruptcy court's jurisdiction over exempt property and to the priority of its tax lien. The district court did not resolve the jurisdictional issue on the ground that Mrs. Gardner's complaint had only requested award of the nonexempt property. The district court affirmed the bankruptcy court's decision that Mrs. Gardner was entitled to the nonexempt property. In doing so, the district court determined that Mr. Gardner held a vested interest in the marital property during the divorce proceedings that the tax lien attached to, but the interest was divested by the divorce decree, thereby subjecting the tax lien to divestiture.

■ The first issue on appeal relates to the jurisdiction of the bankruptcy court. The government contends the bankruptcy court lacked jurisdiction to determine the priority of two competing third-party lienors over property that was exempt from the bankruptcy estate. We believe the jurisdictional issue is even more fundamental and concerns the bankruptcy court's jurisdiction to determine which lienor was entitled to property no longer a part of the bankruptcy estate. We conclude the bankruptcy court lacked jurisdiction to determine whether Mrs. Gardner's interests were superior to those of the government after concluding Mr. Gardner had no interest in the property.

■ Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress. *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Bankruptcy courts have jurisdiction over core proceedings.

---

1. Initially, the tax lien was filed against both Mr. and Mrs. Gardner. At a later date, the I.R.S. released the lien against Mrs. Gardner.

**1518**

*See* 28 U.S.C. § 157. Core proceedings are proceedings which have no existence outside of bankruptcy. *In re Alexander,* 49 B.R. 733, 736 (Bankr.D.N.D.1985). Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings. *In re Wood,* 825 F.2d 90, 96 (5th Cir.1987). Although determination of whether the marital property is part of the bankruptcy estate is a core proceeding, the later determination of the ownership of the marital property as between third parties, such as Mrs. Gardner and the government, is not a core proceeding. *See In re Holland Indus., Inc.,* 103 B.R. 461, 466 (Bankr.S.D.N.Y.1989) (bankruptcy courts determine validity of tax liens under rubric of core proceedings only when lien concerns debtor's property); *cf. In re Jackson,* 102 B.R. 82 (Bankr.N.D.Tex.1988) (court had jurisdiction to determine validity, extent or priority of liens on homestead property pursuant to 28 U.S.C. § 157(b)(2)(K) and (O) as a core proceeding and as a related proceeding even though property was no longer property of bankruptcy estate; jurisdiction retained only to determine what debts are discharged and unsecured indebtedness of debtor's estate). Accordingly, this action is not a core bankruptcy proceeding.

 Bankruptcy courts also have jurisdiction over related proceedings, under the authority of 28 U.S.C. § 1471(b), which confers jurisdiction on district courts for cases related to title 11 proceedings. *In re Fietz,* 852 F.2d 455, 456 (9th Cir.1988); *see also* 28 U.S.C. § 157. Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. *In re Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1286 (10th Cir.1984). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted). Although the proceeding need not be against the debtor or his property, the proceeding is related to the

bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate. *Id.; see also In re Wood,* 825 F.2d at 93 (related matters conceivably have effect on administration of bankruptcy estate); *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir. 1987) (same); *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985) (same).

 A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987). When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, *In re Hall's Motor Transit Co.,* 889 F.2d 520, 523 (3d Cir.1989); *In re Xonics, Inc.,* 813 F.2d at 131; *In re Muller,* 72 B.R. 280, 284 (C.D.Ill.1987), *aff'd,* 851 F.2d 916 (7th Cir.1988), *cert. denied,* ── U.S. ──, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989), and the property's relationship to the bankruptcy proceeding comes to an end. *See In re Hall's Motor Transit Co.,* 889 F.2d at 523. Thus, the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy. *In re Shirley Duke Assocs.,* 611 F.2d 15, 18 (2d Cir.1979).

In this case, the dispute between the government and Mrs. Gardner does not involve identification of the debtor's property interest, since the bankruptcy court had determined Mr. Gardner had no interest in the property. *See In re Xonics, Inc.,* 813 F.2d at 131. Rather, this case involves the conflict between two creditors over property no longer a part of the bankruptcy estate. The conflict between the government and Mrs. Gardner is irrelevant to the bankruptcy estate, because the disputes regarding their stake in Mr. Gardner's property have been resolved, *see In re Incor, Inc.,* 100 B.R. 790, 799 (Bankr.D. Md.1989), and neither Mr. Gardner nor the bankruptcy estate are affected by the dis-

pute between Mrs. Gardner and the government, *see In re Alexander*, 49 B.R. at 737 (bankruptcy court "lacks the jurisdiction to either hear or decide private lien priority disputes involving secured creditors whose dispute does not either directly or indirectly affect the debtor or property of the estate"); *see also In re Federal Shopping Way, Inc.*, 717 F.2d 1264, 1272 (9th Cir.1983) (when property is outside bankruptcy court's possession and trustee claims no interest in property, bankruptcy court is without jurisdiction to adjudicate conflicting claims to ownership of property).

Since the dispute is not otherwise related and would not affect the distribution of assets and administration of the bankruptcy estate, we hold the bankruptcy court lacked jurisdiction to resolve the dispute between Mrs. Gardner and the government regarding a lien on nonestate property. *See In re Holland Indus., Inc.*, 103 B.R. at 469; *In re Dickenson Lines, Inc.*, 47 B.R. 653, 656 (Bankr.D.Minn.1985). To hold otherwise would lead to almost unlimited jurisdiction by the bankruptcy court. *In re Dickenson Lines, Inc.*, 47 B.R. at 656. Either the federal district court or the state courts are the proper forum for resolving this dispute regarding property not belonging to Mr. Gardner.

Because we conclude the bankruptcy court lacked jurisdiction to resolve the dispute between Mrs. Gardner and the government, we need not reach the government's argument that the lower courts erred in holding that Mrs. Gardner's interest in the nonexempt property had priority over the government's perfected tax lien.

The judgment of the United States District Court for the District of Kansas is AFFIRMED to the extent it affirmed the bankruptcy court's determination that Mr. Gardner had no interest in the marital property after the final divorce decree. The judgment is VACATED, and the action is REMANDED with instructions to remand to the bankruptcy court to dismiss for lack of subject matter jurisdiction the portion of the bankruptcy court's opinion and judgment adjudicating the property

rights of Mrs. Gardner and the government.

ENTERED FOR THE COURT PER CURIAM.

BRIGHT, Circuit Judge, dissenting.

The majority today decides that a state court decree can divest a federal bankruptcy court of jurisdiction even though the bankruptcy court acquired jurisdiction at the commencement of the case. This ruling elevates state law over federal law in contravention of well settled principles and leads to an incorrect result. Accordingly, I dissent.

Mrs. Gardner brought this action against Mr. Gardner's bankruptcy trustee and the Government seeking property of the estate held by the trustee. The Government objected on the grounds that it had a federal tax lien with priority over Mrs. Gardner's claim to the property.

The majority concedes that at the start of the action the bankruptcy court had jurisdiction to determine whether to decide the controversy between Mr. Gardner and his divorced wife. Nevertheless, the majority decides that the state court decree awarding Mr. Gardner's property to Mrs. Gardner divested the bankruptcy court of jurisdiction to consider the Government's objection. Thus, under the majority's analysis, the court had jurisdiction over the action brought by Mrs. Gardner and could award her the property held by the trustee, but could not consider whether the Government had a superior claim to the property.

The Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law...." *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). The bankruptcy court and the district court misapplied this principle in deciding that Mr. Gardner had no interest in the property of the estate and that the federal tax lien, which had previously attached to the property held by the trustee, somehow evaporated when the state court awarded the property to Mrs. Gardner. The majority recasts this analysis in jurisdictional terms, by deciding that

the bankruptcy court no longer had jurisdiction over the property once it determined, based on the state decree, that Mr. Gardner no longer possessed ownership rights in the property.

The analysis is flawed in my view. Once the bankruptcy court acquired jurisdiction over the debtor's property, that jurisdiction continued to determine all controversies relating to claims of any and all parties to that property. Thus, the bankruptcy court could determine the priorities between the parties. In this case, the bankruptcy court proceeded to decide the priority between the Government and Mrs. Gardner but erred in its determination.

The bankruptcy court and the district court fail to recognize a line of Supreme Court cases directly governing this situation. In *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), and its progeny,[1] the Supreme Court developed a set of principles to govern issues of priority between federal tax liens and security interests created by state law. This line of cases applies to the situation at hand because Mrs. Gardner's interest in the property at the time the federal tax lien attached upon examination represents nothing more than a type of security interest, regardless of the state law characterization of the interest as "a species of common or co-ownership...." *Smith v. AIFAM Enters., Inc.*, 241 Kan. 249, 737 P.2d 469, 474 (1987).

The effect of Mrs. Gardner's interest in relation to the federal tax lien presents a question of federal law. *Security Trust*, 340 U.S. at 50, 71 S.Ct. at 113. Upon the filing of a divorce, Kansas law creates an interest in one spouse in all the property owned jointly by both spouses or owned individually by the other spouse. *See*

*Smith*, 737 P.2d at 474; Kan.Stat.Ann. § 23–201(b).[2] The extent of the interest created, however, is subject to determination by the divorce court.

In other words, at the filing of the action one spouse gets an interest in the other spouse's property, but the extent of that interest, if any, depends upon the outcome of the divorce proceedings. Thus, there exists no significant distinction for federal tax lien purposes between the interest created under Kansas law and a traditional attachment lien filed at the beginning of a lawsuit.

In *Security Trust*, the Supreme Court considered whether a federal tax lien takes priority over an attachment lien, where the federal tax lien was recorded subsequent to the date of the attachment lien, but prior to the date the attaching creditor obtained judgment. The Court held that the federal tax lien took priority in that case, despite having been filed later, because "[n]umerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists." *Security Trust*, 340 U.S. at 50, 71 S.Ct. at 113.

Under the federal law of tax liens then, a competing lien must not only become effective first, it must be choate—"the identity of the lienor, the property subject to the lien, and the amount of the lien [must be] established"—in order to take precedence over a competing federal tax lien. *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954); *see also United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 721, 99 S.Ct. 1448, 1454–55, 59

---

1. *See, e.g., United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954).

2. The Kansas Legislature adopted section 23–201 to avoid the result of the Supreme Court's decision in *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), holding that inchoate rights granted to a wife in the separate

property of her husband do not reach the dignity of co-ownership, and thus, the transfer to the wife pursuant to a property settlement agreement of appreciated stock owned solely by the husband was a taxable event. *See Wachholz v. Wachholz*, 4 Kan.App.2d 161, 603 P.2d 647 (1979). Under the majority's jurisdictional analysis and the lower courts' analysis of the merits, section 23–201 now provides a loophole around federal tax liens also.

L.Ed.2d 711 (1979). In the case at hand, the amount of Mrs. Gardner's interest in Mr. Gardner's property had not yet been established and thus remained inchoate at the time the federal tax lien became effective. Accordingly, the federal tax lien was entitled to priority and the Government's position in this appeal should be sustained.[3]

The district court's and bankruptcy court's error in this case resulted from viewing the facts of the case in hindsight. Both courts recognized that the federal tax lien attached only to Mr. Gardner's interest in the property. But the courts then asked what interest of Mr. Gardner's remained after the state court issued its divorce decree. The proper time frame for determining the extent of property to which a federal tax lien attaches, however, is the date on which the tax lien becomes effective. This is implicit in the Court's discussion in *Security Trust* of the doctrine of relation back:

> Nor can the doctrine of relation back— which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, [the creditor] did not have a judgment lien. He had a mere *"caveat* of a more perfect lien to come."

340 U.S. at 50, 71 S.Ct. at 113 (citation omitted). On the date that the tax lien in this case became effective, the date the Government recorded the tax lien, Mr. Gardner still had ownership rights in the property and the tax lien attached to those rights.

The majority commits a similar error. As discussed above, the proper time frame for determining whether the Government's tax lien or Mrs. Gardner's interest takes priority is the date the Government recorded the tax lien. But the majority examines the case from a point later in time, after the state court awarded Mrs. Gardner virtually all of Mr. Gardner's property. This represents nothing more than a jurisdictional variant of the doctrine of relation back, which the Supreme Court specifically rejected in *Security Trust.*

Moreover, it would be a waste of time for a bankruptcy court to bifurcate the proceedings in the unusual manner prescribed by the majority. Bankruptcy courts have jurisdiction to decide priority disputes between creditors claiming rights in property of the estate held by the trustee. At the time Mrs. Gardner brought this action seeking to be awarded the property held by the trustee, the court had jurisdiction over the property.[4] The majority decides that the court could decide that Mrs. Gardner was entitled to the property but could not consider the Government's competing claim. In summary, my view is that once jurisdiction attached, that jurisdiction continued for the full resolution of the rights to the property.

I would reverse the judgment of the district court and remand this case for entry of an appropriate judgment consistent with this dissenting opinion.

---

**3.** Moreover, under the analysis applied by the bankruptcy and district courts, a dishonest taxpayer could defeat a federal tax lien with the help of an equally dishonest spouse.

**4.** I agree with the district court that Mrs. Gardner's suit and its disposition relates only to the nonexempt property held by the trustee.