**In re GEE, Richard Wayne and Gee, Rebecca Jean, a/k/a Beasley, Rebecca Jean, Debtors.**

**No. 90–02469–W.**

United States Bankruptcy Court, N.D. Oklahoma.

March 1, 1991.

Edward P. Sullivan, Tulsa, Okl., for debtors.

E. Carlton James, Tulsa, Okl., for Riverwest Federal Credit Union.

Gary Hammond, Tulsa, Okl., for trustee.

ORDER GRANTING "MOTION FOR RE-
LIEF FROM AUTOMATIC STAY
AND ABANDONMENT OF PROPER-
TY" OF RIVERWEST FEDERAL
CREDIT UNION'

MICKEY DAN WILSON, Bankruptcy
Judge.

On December 11, 1990, there came on for
hearing Riverwest Federal Credit Union's
"Motion for Relief From Automatic Stay
and Abandonment of Property" and the
Trustee's "Objection ..." thereto, together
with a related matter, namely the Trustee's
"Objection to Exemption." On February
12, 1991, 124 B.R. 581, this Court issued
its "Order Granting Trustee's 'Objection to
Exemption,'" which said order is hereby
adopted and incorporated herein. Upon
consideration thereof, and of the record
herein, the Court, pursuant to Bankruptcy
Rules 7052 and 9014, further finds, con-
cludes and orders as follows.

## FINDINGS OF FACT

On October 6, 1989, Richard Wayne Gee
and Rebecca Jean Gee ("debtors") executed
a document entitled "Note and Disclosure
Statement" indicating that debtors bor-
rowed a principal amount of $4,996.30 from
Riverwest Federal Credit Union ("River-
west"). Said document also indicated a
finance charge of $884.55 for total pay-
ments of $5,880.85, to be repaid in a "Sin-
gle Payment due 9–30–1990." Under the
heading "Security Offered," the document
indicated "Collateral Assignment from
John Hancock Mutual Life Insurance Com-
pany of Boston, Mass. Policy # LA370,
Richard W. Gee in the amount of $5,555.56
payable and due October 1, 1990." Debt-
ors signed this document on its front side
beneath a statement reading, "If you agree
to make and be bound by the terms of this
Note and Security Agreement sign below."
On the document's other side is the head-
ing "Security Agreement," and beneath
that a series of paragraphs which provide
in part that

> By signing this security agreement on
> the reverse side or by signing the state-
> ment referring to this agreement on the
> back of the check you receive for your

loan, you give the credit union what is
known as a security interest in the prop-
erty described on the reverse side ...

On the same date, debtors executed a sepa-
rate document entitled "Security Agree-
ment" which describes "Gee, Richard W.
and Rebecca" as "Debtor(s)," names River-
west as "Secured Party(ies);" states that

> This Security Agreement covers the fol-
> lowing types (or items) of property: Col-
> lateral Assignment from John Hancock
> Mutual Life Insurance Company of Bos-
> ton, Massachusetts Payment of Policy
> # LA370, Richard W. Gee, in the amount
> of $5,555.56, payable and due October 1,
> 1990;

and further recites that "The undersigned
hereby grant to the above named credit
union, a security interest in the property
herein described and any and all proceeds,
additions and accessions thereto ... to se-
cure payment of the total debt as evidenced
by separate writing ..." This document is
subscribed by both debtors.

Also on October 6, 1989, debtors exe-
cuted a separate document entitled "Collat-
eral Assignment" on a form provided by
"John Hancock Financial Services." This
document provides in pertinent part that

> FOR VALUE RECEIVED, Policy num-
> bered LA370, issued by the JOHN HAN-
> COCK MUTUAL LIFE INSURANCE
> COMPANY, hereinafter called the Com-
> pany, upon the life of Richard W. Gee,
> and all sums now or hereafter due under
> the terms and conditions thereof, and all
> distributions or shares of surplus, divi-
> dend deposits or additions to the Policy
> now or hereafter made or apportioned
> thereto are hereby ASSIGNED and
> TRANSFERRED by the undersigned,
> hereinafter called the Assignor or As-
> signors, unto Riverwest Federal Credit
> Union, 3856 Southwest Boulevard, Tulsa,
> OK. 74107 ... and their legal representa-
> tives, hereinafter called the Assignee or
> Assignees, subject, however to all the
> terms and conditions of said Policy, and
> to any prior pledge or assignment there-
> of to the Company and any other prior
> pledge or assignment thereof which is
> binding on the Company, as collateral

security for a loan of Four Thousand Nine–Hundred Ninety-six and 30/100 ($4,996.30) Dollars together with any and all premiums paid by said Assignee or Assignees.

Said Company is authorized, on maturity of said Policy, to deduct from the proceeds thereof the amount of the indebtedness hereby secured and to pay the same to the Assignee or Assignees, the balance, if any, to be payable to the person or persons entitled under said Policy, provided, however, that unless otherwise directed by the Assignee or Assignees, in writing, the Company may apply any distribution of surplus toward the payment of premiums in full discharge of such distribution.

In case of default in the payment of the indebtedness hereby secured, the Assignee or Assignees may, subject to all the terms and conditions of said Policy, elect to surrender it for its cash value and the Company may pay to the Assignee or Assignees, the amount available upon such surrender, not exceeding the amount of such indebtedness; and shall pay the balance of said amount, if any remains, to the person or persons entitled thereto.

Nothing herein shall authorize the Assignee or Assignees, in a form satisfactory to the Company, shall be conclusive proof of default and of the amount of indebtedness hereby secured.

The Assignor or Assignors hereby WARRANT the validity of this assignment and that there are no prior assignments of this Policy except as noted herein ...

In this instrument the words "Insured" and "Policy" shall be construed to mean "Annuitant" and "Annuity Contract," respectively, if appropriate.

.    .    .    .    .

NOTICE

1. The Company furnishes this form of assignment for the convenience of the parties, and it assumes no responsibility for its sufficiency or validity.
2. No assignment of a Policy is binding on the Company unless in writing nor until it has been filed at the Company's Home Office at 200 Berkeley Street, Boston, Massachusetts 02117. The assignment should be executed on the "Original" and "Duplicate" forms and both instruments should be sent to the Home Office. After acknowledgment, the "Original" will be returned.

.    .    .    .    .

4. Irrevocable beneficiaries must join in assignments in all cases. Revocable beneficiaries must do likewise except in the case of life insurance policies issued since January 1, 1939, and annuity contracts issued between October 1, 1930, and April 1, 1935 or since April 1, 1941.

.    .    .    .    .

The document is signed above the "Notice" by both debtors. Below debtors' signatures but above the "Notice" is a provision that "The John Hancock Mutual Life Insurance Company, without assuming any responsibility for the validity or the sufficiency of the foregoing assignment, has, on this date, filed a duplicate thereof at its Home Office," with the date "10–18–89" noted.

On or about September 4, 1990, Riverwest filed with the Clerk of this Court its "Proof of Claim," indicating a debt of $5,024.98 for an "Account set up on Payroll Deduct $10/week towards interest accrual" but secured as evidenced by attachments. Attached were the "Note and Disclosure Statement," "Security Agreement" and "Collateral Assignment" described above. Also attached were copies of two financing statements. Both financing statements repeat the names of debtors and secured party and the description of collateral given by the "Security Agreement" described above. One financing statement indicates that it was "Received City Clerk's Office 1989 Oct 16 A 11:59 Boston, Mass." The other bears a largely-illegible stamp which appears to indicate filing somewhere in Oklahoma "Oct 1—10:47 AM '89." The vague blots on this pink slip are suggestive of a file-stamp designating the County Clerk of Tulsa County, Oklahoma.

On November 15, 1990, Riverwest filed its "Motion for Relief From Automatic Stay and Abandonment of Property." Riverwest alleged that debtors borrowed $4,996.30 on the above-described note and "assigned money due them, a one (1) year annuity payment from John Hancock Life Insurance Company, as collateral for said note;" that Riverwest "is owner and holder of a perfected security interest in and to the above-described assignment;" and that "there is no equity ... for the benefit of the creditors insofar as the above-described assignment is concerned." Riverwest asked "for an Order removing the automatic stay pursuant to 11 U.S.C. § 362(d) to permit [Riverwest] to proceed against the assignment and for further Order pursuant to 11 U.S.C. § 554(a) directing the Trustee to abandon any interest in said assignment ..."

On November 28, 1990, the Trustee filed her "Objection ..." thereto, stating that she lacked "information ... which she needs to determine whether [Riverwest] has a perfected security interest in the subject property" but asserting that "her present position is that the security interest of [Riverwest] in the subject property is unperfected."

The matter was set for hearing together with a related matter, namely the Trustee's "Objection to Exemption." At hearing, both Trustee and Riverwest went forward on the merits, evidence was introduced and received, and statements and arguments of counsel heard. The parties stated that the abovementioned financing statement, illegibly stamped, attached to Riverwest's "Proof of Claim" was in fact filed with the County Clerk of Tulsa County, Oklahoma, sometime in mid-October, 1989.

## CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), (K), (O), 11 U.S.C. § 362, § 544(a), § 554(b).

Riverwest seeks relief from stay under 11 U.S.C. § 362(d), which provides that

On request of a party in interest ... the court shall grant relief from the stay provided in subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, ... or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property ...

11 U.S.C. § 362(g) further provides that

In any hearing under subsection (d) ... of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Despite reference in its motion to "11 U.S.C. § 554(a)," Riverwest also seeks abandonment under 11 U.S.C. § 554(b), which provides that

On request of a party in interest ... the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

The parties seek a determination, not merely that there is no equity in the property under § 362(g) or that the property is burdensome to the estate under § 554(b), but also of the validity, priority and extent of Riverwest's interest in the property as against the rights of the Trustee.

Determination of validity, priority or extent of interests in property should be carried out by adversary proceeding, Bankruptcy Rule 7001(2), and not by motion for relief from stay or any other motion. However, both Riverwest and Trustee deliberately argued the merits of their positions, and appear to have waived any technical defects in procedure. Both parties received sufficient notice and opportunity to present their positions to satisfy due process. No purpose would be served by insisting on technically correct procedure at this late date.

Riverwest's total claim, principal plus finance charge, exceeds the annuity payment due October 1, 1990 by some hundreds of dollars. On the other hand, Riverwest's own proof of claim shows a debt actually due which is some hundreds of dollars less than the annuity payment due October 1, 1990, and mentions an arrangement for payment of interest alone by debtors' payroll deduction. It is not clear whether the $5,555.56 annuity payment due October 1, 1990 is somewhat more than enough, or somewhat less than enough, to satisfy the balance due on Riverwest's claim. It is at least clear that, if there is any "equity" left over after satisfaction of Riverwest's claim, it is no more than a few hundred dollars.

The parties have not discussed which State's law, Oklahoma's or Massachusetts' or any other State's, governs this transaction. The Court presumes that the law of the State of Oklahoma applies.

■ Riverwest's motion states that Riverwest has "a ... security interest" in "the assignment." This is not correct. The dates, express cross-references, and subject-matter of the "Note and Disclosure Statement," its "Security Agreement" on the reverse page, the separate "Security Agreement," the "Collateral Assignment," and the financing statements, indicate that all these documents should be read together as part of the same transaction. When they are so read, it appears that these documents were not intended to grant Riverwest a security interest in "the assignment," i.e., in a piece of paper. Rather, "the assignment" is itself intended to give Riverwest access to something of greater intrinsic value, namely the annuity payment due October 1, 1990, to secure and/or satisfy debtors' debt to Riverwest. Riverwest is not put in a position to foreclose on or negotiate "the assignment" itself as an item of collateral; rather, with the help of the "assignment," Riverwest is put in a position to divert to itself debtors' annuity payment due October 1, 1990. If there is any collateral here, it is the annuity payment, or rather (since the security interest was granted long before the payment was due) the right to receive the next expected annuity payment.

It is plausible to interpret "the assignment" as intended, together with the other documents, to create a security interest, 12A O.S. § 1–201(37), § 9–102(1)(a), (2). If the assignment were absolute, there would be no need for any security agreements at all, let alone for perfection of same. The provision in the "Note ..." that the loan is due one day before the annuity payment is due suggests that the annuity payment should be resorted to only if prior payment on the note was not made. This "collateral assignment" may be compared and contrasted with the simple and unconditional assignment executed by the annuity purchaser, PepsiCo, to debtors, described in this Court's order issued February 12, 1991. So viewed, the documents involving Riverwest would have been intended to grant Riverwest a security interest, not in "the assignment," but in the debtors' right to receive the annuity payment due October 1, 1990; but because of the exigencies of debtors' own contractual relationship with the annuity obligor, John Hancock, such grant of a security interest in debtors' own contract right took the form of an "assignment" described as "[for or of] collateral." If the "assignment" gives Riverwest a security interest in the right to receive the annuity payment due October 1, 1990, the Court must proceed to consider how such security interest should have been perfected. This depends in turn on how the right to receive the annuity payment is categorized as collateral under the Uniform Commercial Code.

■ However, there is another possibility. The "assignment" is ambiguous, but appears to provide that, on or immediately after October 1, 1990, the annuity payment will be made by John Hancock direct to Riverwest, *either* automatically by virtue of the pre-existing "collateral assignment" alone, or at most after Riverwest's formal tender of an affidavit reciting "default and the amount of indebtedness." The loan is made payable in a lump sum, not in installments; and the lump sum is due only one day before the annuity pay-

ment is due. Under such circumstances, there is no obvious reason why debtors should be expected to pay the loan on its due date out of their own bank or credit union account(s), only to receive the annuity payment a few days later and re-deposit it in the depleted account. The simplest, most practical arrangement would be for debtors to keep their own accounts intact and let Riverwest take the annuity payment in due course. In effect, the parties' intent would be to designate the annuity payment due October 1, 1990 as the source of repayment of Riverwest's loan, and to facilitate Riverwest's access to such payment in the first instance, not merely after failure to collect the loan balance from debtors themselves. In other words, the parties intended the "collateral assignment" to be an absolute assignment; and, since the assignment was not intended as security, there was no need to perfect it. To be sure, this view of the matter would render the series of "Security Agreements" superfluous, the attempts at perfection unnecessary, and the repeated references in all the documents (including the "assignment" itself) to "collateral," "security," etc., as inappropriate and mistaken expressions of the parties' actual intent. But inapt expressions may be expected when standard forms are used to implement a non-standard transaction, and that is exactly what appears here: standard-form security agreements and a disclaimer-laden standard-form "collateral assignment" have been used to implement an unusual method of "securing," or rather satisfying and recompensing, a loan of money.

All things considered, the Court concludes that the latter interpretation of the documents and transaction is the one more nearly approaching the parties' actual intent. The Court determines that the "collateral assignment" was intended and should be treated as an absolute assignment to Riverwest of debtors' rights in the annuity payment due October 1, 1990; that perfection of such absolute assignment was not necessary; and that, accordingly, the right to receive the annuity payment due October 1, 1990 belongs absolutely to Riverwest and not to debtors or to their estate

in bankruptcy. However, Riverwest was assigned and may retain only that part of the $5,555.56 annuity payment needed to satisfy the balance due on Riverwest's claim. Moreover, debtors' right to receive future annuity payments after satisfaction of Riverwest's loan was not meant to be assigned or given as security or otherwise alienated, and (to the extent it is a present right at all) is property of debtors' estate in bankruptcy.

■ In order to put an end to arguments about at most a few hundred dollars, and bearing in mind Riverwest's burden to show that there is no equity, 11 U.S.C. § 362(g)(1), the Court charges Riverwest to apply the proceeds of the annuity payment due October 1, 1990, to the extent necessary to satisfy the balance due on its claim, up to and including the total annuity payment of $5,555.56; to account to the Trustee therefor; to remit to the Trustee any part of said sum of $5,555.56 which is not applied to satisfaction of the balance due on Riverwest's claim; and, if any part of Riverwest's actual debt is still unsatisfied after application of the entire $5,555.56, Riverwest may make a general unsecured claim therefor, but shall have no direct interest in or encumbrance on any portion of any future annuity payments due after October 1, 1990.

IT IS THEREFORE ORDERED that Riverwest's "Motion for Relief From Automatic Stay and Abandonment of Property" be, and the same is hereby, granted, to the extent and under the conditions set forth above.