**In re Jerry Ronald LEWIS, Debtor.**

**UNITED STATES of America, Appellant,**

v.

**Jerry Ronald LEWIS and Jon S. Nicholls, Trustee, Appellees.**

No. 92–K–5.

Bankruptcy No. 90 B 02776 D.

United States District Court, D. Colorado.

July 14, 1992.

Philip E. Blondin, Tax Div., Dept. of Justice, for appellant.

William D. Nelsch, Denver, Colo., for debtor.

Jon S. Nicholls, Denver, Colo., trustee.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

### I. *Introduction*

The government appeals an order of the bankruptcy court which held that the debtor's rights in an ERISA qualified pension plan were superior to the government's. The court below, in a contested proceeding, held that the funds were exempt under federal law and initially ordered the trustee to pay them to the debtor. Upon reconsideration, the bankruptcy court determined it would only have jurisdiction to resolve the competing claims in an adversary proceeding. The government asserts in this appeal that the bankruptcy court was both procedurally and substantively incorrect in its rulings. For the reasons discussed below, I agree that the bankruptcy court was without jurisdiction to determine the re-spective rights of the government and the debtor, once it had first determined that the funds in question were not part of the bankruptcy estate. I therefore reverse the bankruptcy court's decision. Because I determine that the bankruptcy court was without jurisdiction to return the property to the debtor, I need not decide whether the bankruptcy court correctly ruled that ERISA's anti-alienation language makes the funds exempt from the IRS levy and lien.

### II. *Procedural History and Facts*

The debtor became liable for additional income tax for the tax years 1979, 1980, and 1981 after the Internal Revenue Service ("IRS") disallowed a particular tax shelter. The debtor worked at Dover Industries, Inc., ("Dover") which maintained an ERISA qualified pension plan with standard anti-alienation language in which the debtor participated. On February 13, 1989, the IRS filed a levy on the plan seeking $28,720.40 in taxes, penalties and interest. It also filed an appropriate tax lien. The plan administrative committee did not respond to the IRS levy, apparently because the debtor was not entitled to distribution until March 3, 1990. On March 12, 1990, the debtor filed his chapter 7 bankruptcy petition. As of that date, he was entitled to a distribution of $22,938.80. As of that date he owed tax, penalty and interest of $33,251.38. The IRS admitted before the bankruptcy court that all of that amount was probably dischargeable.

On April 10, 1990, Dover filed a motion for order concerning distribution of property. Dover asked the bankruptcy court to tell it to whom it should pay over the funds it held. The government and the debtor each lay claim to the funds. The government asserted the funds were not property of the estate by dint of its earlier filed notice of levy. It also claimed that the matter should have been heard as an adversary proceeding and that, in the absence of proper service, it did not waive sovereign immunity. The debtor claimed the funds were neither property of the estate nor subject to IRS levy. He asked the bank-

ruptcy court to decide that the funds belonged solely to him as post-petition assets.

The bankruptcy court held a hearing on the motion on June 20, 1990. At the end of the hearing the court took the matter under advisement. It also ordered Dover to pay over the funds to the chapter 7 trustee until it was able to make a determination of the respective rights of the parties. The debtor received his discharge on July 25, 1990. On September 20, 1990, the bankruptcy court entered its written order. It first concluded that the debtor's interest in the funds was part of the bankruptcy estate. Next, it determined that the funds were exempt under federal law within the meaning of § 522(b)(2)(a). It then ordered the trustee to pay the funds to the debtor. In so holding, it relied on both *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), and *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

The bankruptcy court did not, in its first order, explicitly address the government's arguments that its levy and lien gave it a superior interest in the funds. Accordingly, on October 4, 1990, the government sought clarification and reconsideration of the court's first order. Inter alia, it asserted that section 522 exemptions do not apply in the case of a properly filed federal tax lien and that the court misinterpreted the *Mackey* and *Guidry* cases. It also asserted that the bankruptcy court misinterpreted certain limiting language in ERISA. 29 U.S.C. § 1144(d) states that "[n]othing in this chapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under such law." Such language, the government thought, required the bankruptcy court to uphold its levy and lien because application of ERISA's anti-alienation language to its levy and lien would violate § 1144(d)'s plain language.

The bankruptcy court heard further argument on March 7, 1991, and ordered additional briefs to be filed. On December 19, 1991, it issued its written order. It reaffirmed its earlier order that the funds were not the property of the bankruptcy estate. It declined, however, to award the funds to either the government or the debtor. Although it concluded that it had inherent jurisdiction to determine entitlement to the funds, it found it could only do so in the context of an adversary proceeding. It therefore denied the motion for reconsideration. This appeal followed.

### III. *Discussion*

#### A. Procedural Issues

##### 1. *Lack of Personal Service & Sovereign Immunity*

■ The government claims the bankruptcy court should have dismissed the case because it was not personally served. In the absence of such personal service, it asserts, there is no waiver of sovereign immunity. The issue has been little litigated. In *United States v. Oxylance Corp.,* 115 B.R. 380 (N.D.Ga.1990), the district court reluctantly reversed the bankruptcy court on the grounds that the debtor had improperly served the United States. It cast its reluctance in the following language:

> Although this appeal may clarify the requirements of the Bankruptcy Rules, it is unlikely to effect [sic] the outcome of the case. The government has not maintained that it was prejudiced by the improper service. If appellee properly serves appellant after remand, the bankruptcy court probably will reach the same result on the merits of the government's priority claim. The Court must reverse because improper service removes jurisdiction; but given the judicial resources exhausted by this appeal and remand, the government claims a Pyrrhic victory.

115 B.R. at 380. Bankr.R. P. 7004 does require service on the Attorney General, the United States Attorney, and the agency itself. The government correctly notes that the primary reason for the rule is to give the United States an opportunity to respond efficiently and timely and so that the United States can properly advance its position in litigation. It suggests that *Messenger v. United States,* 231 F.2d 328 (2d Cir.1956), requires me to reverse the bankruptcy court. I disagree. *Messenger*

teaches that dismissal may be required when there has been delay, prejudice and no waiver by the government.

Here, however, I find a waiver of such service, a complete absence of delay, and no prejudice to the government. I note first that Dover's initial motion was sent to Robert Shaw, at the Denver Internal Revenue Service office. One day later, on April 11, 1990, the court found the motion did not comply with local rule 23 concerning appropriate notice. Dover filed such notice on April 19, 1990 and advised all interested parties of its intent to seek a ruling on its motion on May 9, 1990. A copy of the rule 23 notice was mailed to the U.S. Attorney, the Denver I.R.S. office, and the I.R.S. regional office in Ogden, Utah. At the first hearing on June 20, 1990, the following colloquy took place.

> MR. WEEDA: The other procedural sort of knee jerk pleading is paragraph eight.... [T]he rule-makers saw fit to provide three places for notice, to minimize the possibility the United States would not be able to defend on the merits.
> THE COURT: Well, are you prepared to defend on the merits, or are you going to argue out of both sides of your mouth?
> MR. WEEDEA: Well, can we go both sides?
> THE COURT: No, I'm not going to allow you to do that.
> MR. WEEDA: Okay, we are here to defend. I would reserve the opportunity, however, to keep the record open if there are some facts that need to be established as this hearing develops to protect the United States. [W]e've stipulated to all the facts and I can indicate to the Court what facts we've stipulated to, and I think those are sufficient for resolution. I'm well prepared to argue the legal issues, but with that reservation let me go forward....

*Transcript of June 20, 1990 hearing* at 4, 5.

Under these circumstances, I find that the government had actual notice of Dover's intent to seek relief in the bankruptcy court, that it was prepared to argue the legal issues based upon undisputed and stipulated facts, and that it waived formal service under rule 7004, except to the extent that it could show prejudice to its position by a failure of adequate notice. It made no such showing in the bankruptcy court and has not suggested such a situation here.

### 2. *Necessity for an Adversary Proceeding*

■ The government also asserts that the bankruptcy court was without jurisdiction because Dover filed a motion seeking relief instead of a formal adversary proceeding under rule 7001. I agree that under normal circumstances an action to determine the relative interests in a piece of property should be filed as an adversary proceeding. Such a procedure gives the parties the benefit of the full scope of the rules, including discovery, deposition, protective orders and the like. The bulk of the lower courts that have considered the issue suggest, however, that there must be demonstrable prejudice from the failure to proceed in an adversary proceeding. *See, e.g., In re Gee,* 124 B.R. 586 (Bankr. N.D.Okla.1991); *In re Mark Twain Marine Industries, Inc.,* 115 B.R. 948 (Bankr. N.D.Ill.1990); *In re Yagow,* 62 B.R. 73 (Bankr.D.N.D.1986); *Matter of D.H. Overmeyer Co.,* 40 B.R. 990 (D.N.Y.1984).

The government acknowledged that it was prepared to argue the merits of the case at the first hearing in June, 1990. At that hearing, the facts were stipulated. The government reargued the case again in March, 1991. It filed appropriate briefs after that hearing, directly addressing the issue before the court. It does not assert that it was prejudiced by proceeding as a contested matter. In the absence of demonstrable prejudice, I will not reverse the bankruptcy court's decision merely to enshrine form over substance.

### B. Substantive Issues

### 1. *Jurisdiction in Face of IRS Pre–Petition Levy*

■ The government argues that its prepetition seizure of the debtor's rights in the funds deprived the bankruptcy court of jurisdiction to determine that the funds were or were not property of the bankruptcy estate. It asserts that its levy under 26 U.S.C. § 6331 upon cash is tantamount to a

transfer of ownership to the United States. Thus, it reasons, where the levy occurs before the petition in bankruptcy, the property seized does not become the property of the bankruptcy estate. While there is a certain Machiavellian charm to this argument, I reject it as contrary to the Court's teaching in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *Whiting Pools* held that a bankruptcy reorganization estate includes property of a debtor seized by a secured creditor before it filed a petition for reorganization. 462 U.S. at 209, 103 S.Ct. at 2316. As the Court put it:

> Section 542 simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.

462 U.S. at 212, 103 S.Ct. at 2317. It matters not, as the government suggests, that the property is cash or a cash equivalent instead of tangible property. *In re Challenge Air Intern., Inc.*, 952 F.2d 384 (11th Cir.1992). The tax code permits the IRS to act as a lienor, not as an owner. The enforcement provisions of the code "do not transfer ownership of the property to the United States." 462 U.S. at 210, 103 S.Ct. at 2316. I thus conclude that the bankruptcy court acted properly in determining that it had jurisdiction to determine whether the funds were property of the estate or not.

### 2. Jurisdiction to Determine Competing Claims

 The government next argues that the bankruptcy court was without jurisdiction to determine the respective rights and interest of the government and the debtor in the funds, once it had determined that the funds were exempt from the bankruptcy estate. It asserts that the circuit's decision in *In re Gardner*, 913 F.2d 1515 (10th Cir.1990), is dispositive of the issue. The debtor agrees that the bankruptcy court did not have jurisdiction to determine whether the debtor's interest in the funds was *superior to* the lien interest of the government, but claims it did have jurisdiction to determine whether the property was *titled in* the trustee or the debtor.

In *Gardner*, the bankruptcy court determined that the debtor's former spouse had an interest superior to the government's tax lien in property which the bankruptcy court had already determined was not property of the bankruptcy estate. The tenth circuit disagreed. "We conclude the bankruptcy court lacked jurisdiction to determine whether Mrs. Gardner's interests were superior to those of the government after concluding Mr. Gardner had no interest in the property." 913 F.2d at 1517. Determination of third party interests in marital property are neither a core proceeding under 28 U.S.C. § 157 nor a related proceeding under 28 U.S.C. § 1471(b). 913 F.2d at 1517–18. As such, either the federal district court or the state courts are the proper fora in which to resolve the dispute. 913 F.2d at 1519. A related proceeding is one where the outcome could conceivably have an effect on the bankruptcy estate.

> Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the estate.

913 F.2d at 1518. I am bound by the circuit opinion.

I conclude that the dispute between the IRS and the debtor is neither a core proceeding nor a related proceeding. Since the funds are not property of the estate, their disposition cannot affect the debtor's freedom of action or have any impact on the handling and administration of the estate. Nor do I find the debtor's attempts to sidestep *Gardner* persuasive. If the bankruptcy court did not have jurisdiction to determine the respective rights of the debtor and the government, it did not have jurisdiction to order the trustee to return the funds to the debtor.

The judgment of the bankruptcy court is accordingly reversed.