**In re E–Z SERVE CONVENIENCE STORES, INC. et al., Debtors.**

**The CIT Group/Business Credit, Inc., Appellant,**

**v.**

**Official Committee of Unsecured Creditors of E–Z Serve Convenience Stores, Inc., et al., and Richard M. Hutson, II, Trustee for the Bankruptcy Estates of E–Z Serve Convenience Stores, Inc., et al., Appellees.**

Bankruptcy No. 02–83138.
Civ. No. 1:03CV00921.

United States District Court,
M.D. North Carolina.

Dec. 17, 2004.

Kenneth M. Greene, Carruthers & Roth, P.A., Greensboro, NC, for Appellant.

Lisa P. Sumner, Gentry, Locke, Rakes & Moore, Roanoke, VA, Brent C. Strickland, Dennis J. Shaffer, Martin T. Fletcher, Whiteford, Taylor & Preston, L.L.P., Baltimore, MD, Official Committee of Unsecured Creditors, c/o Lisa P. Sumner Poyner & Spruill, LLP, Raleigh, NC, John A. Northen, Northen Blue, L.L.P., Chapel Hill, NC, for Appellees.

## MEMORANDUM ORDER

TILLEY, Chief Judge.

This appeal arises out of the bankruptcy case involving E–Z Serve Convenience Stores, Inc.; E–Z Serve Corporation; SSCH Holding Corp.; Swifty Serve, LLC; and Swifty Serve Holding Corp. (collectively the "Debtors"), and is currently before this Court on appeal of an order entered by the United States Bankruptcy Court for the Middle District of North Carolina on May 9, 2003, denying the motion of the CIT Group/Business Credit, Inc. ("CIT") for reconsideration of that part of the Bankruptcy Court's February 11, 2003, order allowing Rayburn, Cooper & Durham, P.A. ("RCD") to transfer to the trustee a portion of its pre-petition retainer free and clear of all liens. For the reasons set forth below, the order of the bankruptcy court is reversed.

### I.

The Debtors were engaged in the business of operating convenience stores throughout the southeastern United States. In order to provide capital for the Debtors' business operations, the Debtors entered into a financing agreement with CIT dated September 23, 1999. Pursuant to this agreement, CIT made loans and extended credit to the Debtors secured by perfected first priority liens and security interests in certain assets of the Debtors including all of the Debtors' present and future: accounts, inventory, and general intangibles.

In 2002, the Debtors experienced financial setbacks and began contemplating bankruptcy. Prior to filing for bankruptcy, the Debtors retained RCD to act as local counsel in the Chapter 11 proceedings. In contemplation of legal services to be rendered, expenses to be incurred, and as security for future payment, the Debtors transferred $250,000 to be held in a retainer trust account in the possession of RCD. The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on October 4, 2002. The bankruptcy court ordered that the cases be administered jointly on October 7, 2002. At the time of the bankruptcy filing, the Debtors were indebted to CIT in the amount of approximately $17 million, with an additional exposure of approximately $4.1 million arising from outstanding stand-by letters of credit. On October 10, 2002, the bankruptcy court entered an order lifting the automatic stay as to CIT and all of its collateral except for the Debtors' outstanding accounts. On October 18, 2002, an order was entered appointing a Chapter 11 Trustee. That order provided that the premium required to procure the Trustee's case bond be advanced from retainer funds currently held by counsel for the Debtors. Pursuant to that order, the Trustee received $10,000 from the RCD Retainer Account and a total of $120,000 from the Debtors' other retainer account controlled by their Delaware attorneys, Morris, Nichols, Arsht, & Tunnell ("MNAT"), for partial payment of the Trustee's bond and other administrative costs of the estate. CIT did not object to the use of the retainer funds for these administrative expenses.

After the Trustee's appointment, RCD had only limited involvement in the bankruptcy cases, and on January 9, 2003, it filed a Motion for Authority to Withdraw as Counsel for the Debtors and to Transfer to the Trustee a Portion of the Pre–Petition Retainer Held by Counsel for the Debtors (the "RCD Withdrawal Motion"). At that time RCD held approximately $158,000 of the retainer in its trust account. Although avoidance of liens was not mentioned in the caption of the RCD Withdrawal Motion, both the body of the motion and the prayer for relief sought entry of an order avoiding all liens in the

unused portion of the pre-petition retainer held by RCD.[1] The RCD Withdrawal Motion was served on a number of parties in interest including CIT. No objections to the RCD Withdrawal Motion were received, and on February 11, 2003, the Bankruptcy Court entered an order allowing the motion ("RCD Withdrawal Order").

On March 10, 2003, twenty-seven days after entry of the order, CIT filed a motion for reconsideration of that part of the order avoiding its lien in its interest in the RCD retainer. In that motion, CIT claimed it had a first priority perfected security interest in the retainer refund pursuant to its financing agreement with the Debtors.[2] After a hearing held on April 3, 2003, at which the Trustee opposed reconsideration, the Bankruptcy Court on May 9, 2003, entered an order denying reconsideration, which CIT timely appealed to this Court.

## II.

■ When a district court acts in its capacity as a bankruptcy appellate court, the court reviews the bankruptcy court's factual findings for clear error. Fed. R. Bankr.P. 8013. Questions of law are subject to de novo review. Ordinarily, review of a bankruptcy court denial of a motion for reconsideration pursuant to Fed. R.Civ.P. 60(b) is subject to an abuse of discretion standard. *In re Tardugno,* 241 B.R. 777, 779 (1st Cir. BAP 1999). However, to the extent that the Debtors failed to provide due process to CIT, the court faces a constitutional issue that is treated as a pure question of law subject to review de novo. Therefore, whether the Bank-

ruptcy Code and Rules required the Debtors to bring an adversary proceeding to discharge CIT's lien against the retainer and whether the notice the Debtors provided violated CIT's due process rights are both legal questions that must be reviewed de novo. *See Banks v. Sallie Mae Servicing Corp. (In re Banks),* 299 F.3d 296, 300 (4th Cir.2002).

## A.

■ Due process requires adequate notice of any action which may have a substantive impact on a party's vested property rights. *Mullane v. Central Hanover Bank and Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Elaborating on this constitutional requirement, the Fourth Circuit has found that "where the Bankruptcy Code and Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." *Banks,* 299 F.3d at 303 n. 4. Therefore, the specific issue before this Court is whether CIT received the degree of notice it was entitled to under the Bankruptcy Code and Rules.

■ The Bankruptcy Rules require debtors to bring an adversary proceeding when determining "the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr.P. 7001(2). A debtor commences an adversary proceeding by filing a complaint. Fed. R. Bankr.P. 7003. Where the creditor is a corporation, service of the complaint requires a summons delivered to "an officer, a managing or general agent, or to any agent authorized

---

1. However, CIT observes that RCD nor its client had any financial or legal interest in whether liens which might otherwise have attached to those proceeds were removed prior to transferring the funds to the trustee.

2. The validity of CIT's lien in the retainer will not be addressed in this opinion because it is currently an issue before this Court in a separate appeal.

by appointment or by law to receive service of process." Fed. R. Bankr.P. 7004(b)(3). The creditor then has thirty days from the issuance of the summons to file an answer. Fed. R. Bankr.P. 7012. The bankruptcy court rules on the dispute only after a trial or upon receipt of a dispositive motion. Fed. R. Bankr.P. 7001. Thus, the notice associated with an adversary proceeding is a heightened degree of notice compared to the copies of motions that are routinely served to all parties in interest to a bankruptcy case. In a bankruptcy case, there are many actions taken in the case which affect the general administration of the case and all creditors generally, but none specifically. These matters usually require notice, but not service of process. *Banks,* 299 F.3d at 301. When the rights of specific parties are at issue, service of process on the party is required. *Id.* The Fourth Circuit made clear in *Banks* that the issue of due process was not merely a question of whether the party was given notice, but that due process requires a party to receive the degree of notice specified in the Bankruptcy Code and Rules. *Id.* at 303.

■ In this case, the Debtors failed to initiate an adversary proceeding. Instead, the Debtors provided CIT only with notice of the withdrawal motion. Although this Court recognizes that sophisticated lenders like CIT should keep abreast of all the pleadings in bankruptcy cases, over 2,000 pleadings have been filed in these Debtors' bankruptcy cases, and it is unlikely that any party in interest has read them all from start to finish. This Court does not make any finding regarding the bankruptcy court's decision that the caption of the RCD Withdrawal Motion was sufficient to put CIT on notice that its lien may be at issue in the motion. Instead the holding here relies on the fact that the Debtors did not provide CIT with sufficient due process because the Debtors did not initiate an adversary proceeding as required by the Bankruptcy Code and Rules.

## B.

■ A party may waive its right to protest the lack of an adversary proceeding. Waiver occurs when a party knowingly fails to litigate a Rule 7001 issue that they had the opportunity to litigate. *In re Village Mobile Homes, Inc.,* 947 F.2d 1282, 1283 (5th Cir.1991). Further, even if a party does not waive his right to an adversary proceeding, the lack of such a proceeding will be deemed "harmless error" in the event that the failure to provide an adversary proceeding does not result in demonstrable prejudice. *E.g., In re Lewis,* 142 B.R. 952, 955 (D.Colo.1992).

■ The Debtors claim that CIT waived its right to protest the lack of an adversary proceeding by failing to litigate the previous transfers of portions of the Debtors' attorney retainer accounts. The Debtors do not provide any case law supporting the contention that CIT's failure to object to a previous transfer of property is equivalent to the waiver of a right to object to future transfers of property. In these prior incidents, CIT explains that they had no reason to object because they did not oppose the earlier transfers. The previous transfers were made at a time when the Debtors' estates had no other available source of funds to finance a liquidation of assets, and no party sought any ruling with respect to CIT's lien rights. Because no party ever challenged CIT's lien and no transfer occurred in which CIT objected, there was no need to object to the earlier transfers. The first objectionable transfer occurred as a result of the Bankruptcy Court entering the RCD Withdrawal Order that avoided CIT's lien, and CIT acted promptly after discovering that its rights had been unexpectedly af-

fected by that order. There are no facts in this case suggesting that CIT waived its right to an adversary proceeding nor to the procedures that accompany such a proceeding, specifically the service of a Summons and Complaint notifying CIT of the Debtors plans to strip off their lien.

The Debtors next claim that their failure to provide an adversary proceeding was harmless error because CIT did not show demonstrable prejudice. The Debtors claim the lack of prejudice to CIT was made clear when CIT later consented to allowing the Bankruptcy Court to consider the issues of this case outside of an adversary proceeding. This statement ignores the fact that CIT was prejudiced by not receiving a Summons and Complaint, as it would have in an adversary proceeding, notifying it that its lien was under attack. CIT would have had no reason to believe RCD would move to avoid a lien in which neither it nor its client would have had any interest, and the caption of the RCD withdrawal motion was silent as to RCD's request to avoid any liens on the funds. CIT's failure to respond to the original notice and the resulting order avoiding CIT's lien in the retainer account certainly amounts to demonstrable prejudice resulting from the Debtors failure to pursue an adversary proceeding. Therefore, the Debtors failure to follow the Bankruptcy Code and Rules requirement of providing an adversary proceeding was not harmless error.

### III.

For the reasons set forth above, CIT is entitled to relief from the RCD Withdrawal Order. Accordingly, the Bankruptcy Court is reversed, and on remand the Bankruptcy Court should allow CIT to pursue its lien subject to our decision in the appeal of *In re E–Z Serve Convenience Stores, Inc., et al.,* 299 B.R. 126 (Bankr. M.D.N.C.2003).