In re Inez TRAVERS, Debtor.

Inez Travers, Plaintiff

v.

Bank of America, N.A., Alias, and John Doe, Alias, Defendants.

Bankruptcy No. 11–12650.
Adversary No. 11–01047.

United States Bankruptcy Court,
D. Rhode Island.

Signed March 25, 2014.

knowledge of the case in time for such timely filing....

11 U.S.C. § 523(a)(3)(A).

John B. Ennis, Cranston, RI, for Plaintiff.

Christopher Somma, Goodwin Procter LLP, Boston, MA, Harris K. Weiner, Salter McGowan Sylvia & Leonard, Inc., Providence, RI, for Defendants.

John Doe, pro se.

### MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

(this relates to Doc. # 38)

DIANE FINKLE, Bankruptcy Judge.

Defendant Bank of America, N.A. seeks dismissal of this adversary proceeding brought by Plaintiff–Debtor Inez Travers for statutory damages, rescission of the Defendant's mortgage against her residence, and attorney's fees for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and Regulation Z, 12 C.F.R. § 226.1.[1] In ruling on

---

**1.** John Doe also is named as a defendant to represent any other entity holding an interest in the mortgage or note executed by the Plaintiff. The only defendant who has participated

the motion, I have considered the Plaintiff's Complaint for Declaratory Judgement [sic] Equitable Relief, Rescission, Recoupment, and Damages (Doc. # 1)[2] (the "Complaint"), the Answer of Bank of America, N.A. (Doc. # 18) (the "Answer"), Bank of America, N.A.'s Motion to Dismiss (Doc. # 38) (the "Motion to Dismiss"), the Plaintiff's Objection to Motion to Dismiss (Doc. # 49) (the "Objection"), the Supplemental Memorandum of Law in Support of Bank of America, N.A.'s Motion to Dismiss (Doc. # 66) (the "Defendant's Supplemental Memorandum"), and the Plaintiff's Supplemental Memorandum of Law (Doc. # 96) (the "Plaintiff's Supplemental Memorandum"). Among other grounds,[3] the Defendant moves to dismiss the Complaint for lack of jurisdiction because there is no longer a bankruptcy estate, the Plaintiff's underlying bankruptcy case having been closed quite some time ago. After due consideration, I conclude that this Court no longer has subject matter jurisdiction over this matter. On that basis, this adversary proceeding should be dismissed.

## I. STANDARD OF REVIEW

■ The Defendant moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1).[4] Procedurally, this rule permits a party to assert lack of subject matter jurisdiction as a defense by way of a motion to dismiss. "The part[y] asserting jurisdiction, here the [P]laintiff[ ], [has] the burden of demonstrating the existence of federal jurisdiction." *Acosta–Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 20 (1st Cir. 2013). The issue of subject matter juris-

diction should be resolved before addressing the merits of the action. *See Morales Feliciano v. Rullan*, 303 F.3d 1, 6 (1st Cir.2002) ("[T]he preferred—and often the obligatory—practice is that a court, when confronted with a colorable challenge to its subject-matter jurisdiction, should resolve that question before weighing the merits of a pending action.").

■ In reviewing the Motion to Dismiss, I must accept as true all allegations contained within the Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Aversa v. United States*, 99 F.3d 1200, 1209–10 (1st Cir.1996) (internal citations omitted) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted...."). Both the procedural history and factual background of this proceeding are pivotal to the resolution of the jurisdictional challenge raised by the Defendant.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. The Mortgage Transaction

On July 24, 2007, the Defendant entered into a consumer credit transaction with the Plaintiff involving the Plaintiff's residence at 25 Cantara Street, West Warwick,

---

in the adversary proceeding has been Bank of America, N.A.

**2.** All references herein to the docket are to the adversary proceeding docket, A.P. No. 11–01047, unless otherwise indicated.

**3.** Alternatively, the Defendant requests entry of judgment on the pleadings. In light of my

ruling on the jurisdictional issue which is dispositive of this matter, this alternative ground need not be addressed.

**4.** Fed.R.Civ.P. 12(b) is applicable to adversary proceedings in bankruptcy cases pursuant to Fed. R. Bankr.P. 7012(b).

Rhode Island (the "Property"), advancing funds to the Plaintiff in the principal amount of $198,000 and securing such advances with a first mortgage against the Property (the "Mortgage Transaction"). *See* Objection, Exhibit B at 34. The Plaintiff alleges that at the time of the closing on the Mortgage Transaction she did not receive an accurate Truth–in–Lending Disclosure Statement as required by TILA and its implementing regulation, Regulation Z. More specifically, the Plaintiff asserts that in violation of the statutory and regulatory requirements certain charges were not listed as finance charges on the Disclosure Statement, the calculation of the annual percentage rate was inaccurate, and she did not receive two copies of the statutory "Notice of Right to Cancel."

Within three years of the Mortgage Transaction, the Plaintiff sent a notice of rescission on June 19, 2010 (the "Notice of Rescission") to BAC Home Loans, Servicing, LP ("BAC"), the entity servicing the loan on behalf of the Defendant. BAC received the Notice of Rescission on June 22, 2010, and the Plaintiff alleges that on June 30, 2010, the Defendant refused to accede to her request to rescind the Mortgage Transaction and discharge the mortgage.[5]

## B. The Bankruptcy Case

On June 30, 2011, the Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code.[6] On the same day she also filed the Complaint against the Defendant.

Less than one month later the Plaintiff's case converted to Chapter 7, and the Plaintiff subsequently filed her bankruptcy schedules. On "Schedule A—Real Property," the Plaintiff listed an interest in the Property in fee simple with a value of $165,500, and a secured claim against the Property in the amount of $183,050.[7] On "Schedule B—Personal Property," the Plaintiff listed the TILA claims against the Defendant in an "unknown" amount. On "Schedule C—Property Claimed as Exempt," the Plaintiff elected the state statutory exemptions, claimed a homestead exemption in the amount of "$0," and claimed an exemption in the TILA claims in an "unknown" amount. No objections to these claimed exemptions were filed. On September 1, 2011, the Chapter 7 Trustee filed a "Report of No Distribution" (the "No–Asset Report"), and on November 2, 2011, the Plaintiff received her discharge. The bankruptcy case was closed but this adversary proceeding remained open pending its resolution.

## C. The Adversary Proceeding

The Complaint contains three specific counts for relief: Count I to enforce the Plaintiff's right to rescind the Mortgage Transaction under 15 U.S.C. § 1635(a) and to recover actual damages under 15 U.S.C. § 1640(a); Count II to recover an amount equal to twice the finance charge and the actual damages incurred, as well as attorney's fees and costs, pursuant to 15 U.S.C.

---

5. It is unclear from the parties' filings how the Defendant communicated its refusal to discharge the mortgage, *i.e.*, whether the Defendant corresponded with the Plaintiff indicating its intent to enforce the Mortgage Transaction, or whether the Defendant simply had not taken affirmative steps to rescind the mortgage as contemplated by 15 U.S.C. § 1635(b). Either way, this is not determinative for purposes of my ruling.

6. Unless expressly stated otherwise, all references to the Bankruptcy Code or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

7. The Court may take judicial notice of the bankruptcy docket. *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 ·(1st Cir. 1999).

§ 1640(a); and Count III to disallow any proof of claim the Defendant might file.[8]

The Defendant filed the Motion to Dismiss on March 1, 2013,[9] and the Plaintiff lodged her Objection on April 8, 2013. Following a hearing on June 19, 2013, I ordered the parties to file supplemental memoranda on the issue of retaining jurisdiction in the event jurisdiction existed on the date the action was commenced but subsequent events altered that jurisdiction. The Defendant's Supplemental Memorandum was filed on August 27, 2013, and the Plaintiff's Supplemental Memorandum on November 18, 2013.

I did not act on the Motion to Dismiss in light of the Plaintiff's statements in her Supplemental Memorandum that she was currently participating in a trial loan modification with the Defendant towards a possible overall settlement of the action. During a conference with the parties on December 2, 2013, the Plaintiff explained that she would release her claims against the Defendant and voluntarily dismiss the adversary proceeding if offered a permanent loan modification in line with the trial plan at the conclusion of the trial plan period. On December 13, 2013, I approved the parties' stipulation essentially staying the proceeding until conclusion of the trial plan in January 2014 (Doc. # 107). Things apparently went awry, and on February 4, 2014, the Defendant filed a status report advising that the Plaintiff had rejected the permanent loan modification offered and requesting a ruling on its pending Motion to Dismiss (Doc. # 109). That same day, the Plaintiff filed her own status report explaining her reasons for rejecting the Defendant's offer (Doc. # 112). The Court then took the matter under advisement.

## III. DISCUSSION

### A. The Court's Jurisdiction

■ In its Answer the Defendant admitted that this Court has jurisdiction over this adversary proceeding, and in her Objection the Plaintiff implies that the Defendant has therefore waived its jurisdictional challenge. This waiver argument fails because "parties cannot confer subject matter jurisdiction on a federal court by waiver or consent." *Quinn v. City of Boston*, 325 F.3d 18, 26 (1st Cir.2003); *see also Sheridan v. Michels (In re Sheridan)*, 362 F.3d 96, 100 (1st Cir.2004) (citing to *Quinn*). Moreover, "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)).

■ "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). In one of the Supreme Court's more recent landmark opinions in the bankruptcy are-

---

**8.** Count III is merely precautionary and the Plaintiff concedes that this count may be moot. As the Defendant has not filed a proof of claim, Count III is indeed moot.

**9.** Although the Complaint was filed on June 30, 2011, a default was entered against the Defendant on August 10, 2011, followed by entry of a default judgment against the Defendant on September 9, 2011. The parties later filed a joint motion to vacate the default judgment on February 7, 2012, which was granted on February 27, 2012. The Defendant filed its Answer on February 10, 2012, and the parties filed their discovery plan on March 19, 2012. The discovery deadlines in that plan were extended several times at the request of the parties.

na, *Stern v. Marshall,* the Court summarized the three distinct types of matters falling within the bankruptcy courts' jurisdiction:

> [T]he district courts of the United States have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." § 157(a). District courts may refer any or all such proceedings to the bankruptcy judges of their district, *ibid.,* . . . .

— U.S. ——, 131 S.Ct. 2594, 2603, 180 L.Ed.2d 475 (2011). The United States District Court for the District of Rhode Island has referred all cases arising under title 11 to this Court. *See* DRI LR Gen. 109(a).

*Stern* further clarifies that pursuant to 28 U.S.C. § 157(b)(1) and (c)(1), "[t]he manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved," differentiating between core proceedings—proceedings arising under title 11 or arising in a case under title 11—and non-core proceedings—proceedings otherwise related to a case under title 11. *Stern,* 131 S.Ct. at 2603–04. Subject to certain constitutional limitations that are not relevant here, a bankruptcy court may enter final orders and judgments in core proceedings. These " 'include, but are not limited to' 16 different types of matters" set forth in 28 U.S.C. § 157(b)(2). *Id.* In matters that are non-core proceedings but are "related to" a bankruptcy case, unless the parties consent, a bankruptcy court may not enter a final judgment and instead must submit proposed findings of fact and conclusions of law to the district court for *de novo* review. *Id.* at 2604 (citing 28 U.S.C. § 157(c)(1)).

What type of jurisdiction, if any, a bankruptcy court has in a matter is an issue a court must determine before adjudicating the merits. "The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). I turn then to whether the Plaintiff's claims asserted in the Complaint constitute a core proceeding or alternatively, a non-core proceeding which nevertheless qualifies as a "related to" proceeding.

### 1. Core Proceedings

"Core proceedings involve rights created by the Bankruptcy Act; they depend on the Bankruptcy Act for their existence." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991) (citing 28 U.S.C. § 157(b)(2); *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990)). The Plaintiff contends that this proceeding is a core proceeding within the scope of 28 U.S.C. § 157(b)(2)(K) involving the "determinations of the validity, extent, or priority of liens," and that this provision allows this Court to determine the validity of her mortgage. *See* Objection at 4–6 (citing *DiVittorio v. HSBC Bank USA, N.A. (In re DiVittorio),* 670 F.3d 273 (1st Cir.2012); *DeGiacomo v. Traverse (In re Traverse),* 485 B.R. 815 (1st Cir. BAP 2013); *Acevedo v. Wells Fargo Bank, N.A. (In re Acevedo),* 476 B.R. 360 (Bankr.D.Mass.2012); *Lima v. Conlon (In re Lima),* Adversary No. 11–1010, 2012 WL 3070569 (Bankr. D.R.I. July 30, 2012)). Each of these cases, however, presents distinguishable facts. None of them involved an adversary proceeding in a closed Chapter 7 case

in which the debtor claimed an exemption in the property and the claims in litigation, and in which the trustee had abandoned all of the estate's assets to the debtor. And that is precisely the factual situation before me.

On similar facts, the bankruptcy court in *Maxwell v. HSBC Mortg. Corp.* held that a Chapter 7 plaintiff's adversary proceeding (involving non-TILA claims) was not a core proceeding because the Chapter 7 trustee had abandoned the real property to which the claims pertained. *See Maxwell v. HSBC Mortg. Corp. (USA) (In re Maxwell)*, Adversary No. 12–5284, 2012 WL 3678609, at *2 (Bankr.N.D.Ga. Aug. 22, 2012). The court explained:

> Though this proceeding does not invoke a substantive right created by bankruptcy law and could exist outside of bankruptcy, Plaintiff nevertheless claims that this case represents a core proceeding because, pursuant to 28 U.S.C. § 157(b)(2)(K), a core proceeding may be brought to determine the "validity, extent, or priority of liens." However, this provision only encompasses proceedings to determine the validity, extent, or priority of liens on the estate's or the debtor's property. Cases have held that, to fall within the court's jurisdiction, a plaintiff's claims must affect the estate, not just the debtor. Indeed, "[t]o the extent that the literal wording of some of the types of proceedings [listed in § 157(b) ] might conceivably seem to apply, it should be remembered that engrafted upon all of them is the overarching requirement that property of the estate under § 541 be involved." Here, the property in question has been abandoned and is no longer part of the estate. Any resolution regarding the validity, priority, and extent of liens on the abandoned property will only affect the debtor; it will have no effect on the bankruptcy estate. It is thus evident that this action is not a core proceeding under 28 U.S.C. § 157(b).

*Id.* at *2 n. 2 (internal citations omitted). Contrary to the Plaintiff's assertions, this Court does not currently have subject matter jurisdiction over the Plaintiff's claims under to 28 U.S.C. § 157(b)(2)(K).

The Plaintiff also argues that the proceeding is core because her claims will have an impact on the assets of the estate. While the Plaintiff does not refer to any specific statutory provision to support her contention, the only other provision of this jurisdictional statute conceivably applicable is subsection (O), the "catch-all" provision. *See* 28 U.S.C. § 157(b)(2)(O). This subsection renders core "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." *Id.* Notably, the Plaintiff fails to cite any cases bolstering this attempted jurisdictional hook. The Defendant repels this attempt by relying on the ruling in *Lacey v. BAC Home Loans Servicing, LP (In re Lacey)*, Adversary No. 10–1249, 2011 WL 5117767 (Bankr.D.Mass. Oct. 27, 2011). In *Lacey*, the court determined that the plaintiff's claim was non-core, explaining that even under 28 U.S.C. § 157(b)(2)(O) "a matter cannot be deemed to be core merely because the debtor holds a claim which, if successful, could increase the assets of the estate.... If this Court conferred core jurisdiction on that basis, ... virtually any claim which could increase the assets of the estate would entitle the bankruptcy court to ignore the constitutional proscription set forth in [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ]." *Id.* at *5 (quoting *Hayim v. Goetz (In re SOL, LLC)*, 419 B.R. 498, 506 (Bankr.S.D.Fla.2009); *Marill Alarm Sys-*

*tems, Inc. v. Equity Funding Corp. (In re Marill Alarm Systems, Inc.),* 81 B.R. 119, 123 n. 8 (S.D.Fla.1987)).

As a result of the Trustee's abandonment of the claims in this adversary proceeding and the closing of the Chapter 7 case, any potential impact or monetary recovery that may result will inure solely to the Plaintiff's benefit. Hence, it is clear that the claims asserted in the adversary proceeding are well outside the purview of 28 U.S.C. § 157(b)(2)(O).

In short, this adversary proceeding is not a core matter under 28 U.S.C. § 157(b)(2).

### 2. Non–Core Proceedings—"Related To" Jurisdiction

■ Next I must determine whether the Plaintiff's claims are matters "related to" a case under title 11. 28 U.S.C. § 157(a). While the First Circuit has described this jurisdictional underpinning as extensive, it is not without limitation:

> The statutory grant of "related to" jurisdiction is quite broad. Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Thus, bankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation "potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991) (quot-

ing *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989)).

*Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.),* 410 F.3d 100, 105 (1st Cir.2005).

■ When the Plaintiff commenced the adversary proceeding, the outcome of the TILA litigation would have affected her bankruptcy estate and "related to" jurisdiction vested in this Court. *See Gardner,* 913 F.2d at 1518 ("A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case."). The Defendant correctly observes, however, that such jurisdiction is "temporal"; while the bankruptcy court may have exclusive jurisdiction over property as of the commencement of a debtor's case, the bankruptcy court's jurisdiction over such property ends when it is no longer property of the estate. *See id.; Scarborough v. Angel Fire Resort Operations, LLC (In re Angel Fire Corp.),* Adversary No. 11–1110–S, 2012 WL 5880675, at *7 (Bankr.D.N.M. Nov. 20, 2012); *United States v. Fleet Nat'l Bank (In re Calore Express Co., Inc.),* 288 B.R. 167, 169–70 (D.Mass.2002) ("[T]here are two dimensions on which to assess 'related to' jurisdiction: substantive and temporal. A matter may be unrelated to a bankruptcy estate because it substantively has no impact on that estate, or it may be unrelated because the estate does not exist anymore. Either way, if a given dispute is unrelated to a bankruptcy estate, a bankruptcy court … has no subject-matter jurisdiction over that dispute.").

The Defendant maintains that whatever jurisdiction this Court may have had over this adversary proceeding ceased once the TILA claims were abandoned by the Trustee and revested in the Debtor.[10] *See*

---

**10.** 11 U.S.C. § 554(c) expressly provides: "Unless the court orders otherwise, any prop-

erty scheduled under section 521(a)(1) of this title not otherwise administered at the time of

Defendant's Supplemental Memorandum at 7–8 (citing *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 591 (10th Cir. 1990), *aff'd*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 200 (9th Cir. BAP 1998); *Oregon v. Lange (In re Lange)*, 120 B.R. 132, 135 (9th Cir. BAP 1990); *Newkirk v. Wasden (In re Bray)*, 288 B.R. 305, 307 (Bankr.S.D.Ga.2001)). Additionally, relying on *Harris v. HSBC Bank USA, N.A. (In re Harris)*, 450 B.R. 324 (Bankr.D.Mass.2011), the Defendant argues that as a result of the Plaintiff's homestead exemption, the Trustee's abandonment of the claims, and the Plaintiff's discharge, "the outcome of the Plaintiff's Complaint will have no conceivable impact on her bankruptcy estate" and "related to" jurisdiction no longer exists. Motion to Dismiss at 11.

The Defendant accurately depicts the limits of this Court's jurisdiction over this adversary proceeding. Jurisdiction of bankruptcy courts being temporal, the "related to" jurisdiction of this Court over the Property and the TILA claims evaporated upon the Trustee's abandonment of the claims, the Debtor's discharge, and the closure of the case. *See Harris*, 450 B.R. at 335 n. 46 (quoting *VonGrabe v. Mecs (In re VonGrabe)*, 332 B.R. 40, 43–44 (Bankr. M.D.Fla.2005)) ("[B]ecause discharge had issued and [the] debtor's prepetition claims were abandoned by the Chapter 7 trustee, the debtor was 'revested with the right to pursue his assorted claims against the various defendants in a more appropriate forum.'").

**B. Discretionary Retention of Proceeding**

My analysis does not end here though, because under certain circumstances I

the closing of a case is abandoned to the debtor and administered for the purposes of

may exercise discretion to retain the proceeding and decide the matter on its merits. Obviously, the Plaintiff urges me to exercise such discretion and permit her to present her claims at trial. The Defendant concedes that "[d]espite the temporal nature of property of the estate and bankruptcy court jurisdiction over related to proceedings, the Bankruptcy Court has discretion to retain jurisdiction over cases where the underlying bankruptcy proceedings have been terminated, *i.e.*, the entering of the discharge or dismissal of the main bankruptcy case." Defendant's Supplemental Memorandum at 9. Not surprisingly, the Defendant insists that this is not a proceeding over which jurisdiction should be retained to adjudicate the merits.

■ The Bankruptcy Appellate Panel for the First Circuit recently discussed discretionary retention of jurisdiction by a bankruptcy court. "The dismissal of a bankruptcy case normally results in dismissal of related proceedings because federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings. . . . This general rule is not without exceptions." *Melo v. GMAC Mortg., LLC (In re Melo)*, 496 B.R. 253, 256 (1st Cir. BAP 2013) (internal quotations marks and citations omitted) (quoting *Hamilton v. Appolon (In re Hamilton)*, 399 B.R. 717, 720 (1st Cir. BAP 2009)). In *Hamilton v. Appolon*, the Panel remanded the matter to the bankruptcy court for a determination of whether the court should retain jurisdiction based upon several circuit court decisions affirming bankruptcy courts' retention of jurisdiction over adversary proceedings in which the underly-

section 350 of this title."

ing bankruptcy cases had been dismissed. *Hamilton,* 399 B.R. at 722 & n. 7.

■ On remand, Judge Feeney adopted the Second Circuit's approach to determine whether she should retain jurisdiction of the adversary proceeding:

> We join several other circuits in adopting *the general rule that related proceedings ordinarily should be dismissed following the termination of the underlying bankruptcy case. This general rule favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case. See In re Querner,* 7 F.3d 1199, 1201–02 (5th Cir.1993); *In re Morris,* 950 F.2d 1531, 1533 (11th Cir. 1992); *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989). Notwithstanding this general rule, however, nothing in the Bankruptcy Code requires a bankruptcy court to dismiss related proceedings automatically following the termination of the underlying case. *See, e.g., In re Querner,* 7 F.3d at 1201–02; *In re Carraher,* 971 F.2d 327, 328 (9th Cir.1992) (per curiam); *In re Morris,* 950 F.2d at 1534; *In re Roma Group,* 137 B.R. 148, 150 (Bankr.S.D.N.Y.1992); *In re Pocklington,* 21 B.R. 199, 202 (Bankr. S.D.Cal.1982). Indeed, section 349 of the Bankruptcy Code authorizes bankruptcy courts to alter the normal effects of the dismissal of a bankruptcy case if cause is shown. *See* 11 U.S.C. § 349 (setting forth consequences of dismissal "unless the court, for cause, orders otherwise"). Accordingly, we hold that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending.

*Hamilton v. Appolon (In re Hamilton),* Adversary No. 07–1060, 2009 WL 2171097, at *6 (Bankr.D.Mass. July 15, 2009) (emphasis supplied) (quoting *Porges v. Gruntal & Co., Inc. (In re Porges),* 44 F.3d 159, 162 (2d Cir.1995)). Judge Feeney then applied the analysis used by federal courts regarding disposition of pendent state claims after dismissal of the federal law claims upon which the door to federal court jurisdiction had opened. *See id.* "[A] court must consider four factors in determining whether to continue to exercise jurisdiction: judicial economy, convenience to the parties, fairness and comity." *Porges,* 44 F.3d at 162–163 (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *DiLaura v. Power Authority of New York,* 982 F.2d 73, 80 (2d Cir.1992)). Following Judge Feeney's lead, I will apply these four factors to determine if retention of the Plaintiff's adversary proceeding by this Court is appropriate.

### 1. Judicial Economy

■ The Seventh Circuit aptly portrays the procedural quagmire of an adversary proceeding once the underlying bankruptcy case has been dismissed:

> [W]hen the bankruptcy proceeding is dismissed, the adversary claim (when based solely on state law) is like the cartoon character who remains momentarily suspended over a void, spinning his legs furiously, when the ground has been (quite literally) cut out from under him. So tenuous is the federal link that the court ought to have the power to relinquish jurisdiction over the adversary claim if no possible federal interest, including the interest in reducing the

cost of the bankruptcy process, would be served by retention.

*Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81–82 (7th Cir.1995). The Plaintiff's TILA claims, based on non-bankruptcy law, are so feebly linked to the underlying bankruptcy case that I am hard-pressed to find a sufficient bankruptcy interest that would justify this Court retaining jurisdiction over the adversary proceeding. I concur with the Defendant's assessment that this proceeding is a "dispute of no interest to anyone except the two adversaries," and it no longer implicates the objectives of the Bankruptcy Code to justify its continuation in this Court. Defendant's Supplemental Memorandum at 10 (quoting *Chapman,* 65 F.3d at 82).

Furthermore, as the Defendant points out, "[i]n cases where the courts have retained post-dismissal jurisdiction, those courts have invested significant judicial resources in the related adversary proceedings," citing to three cases in which the adversary proceedings were pending for four to six years. *Id.* at 10–11. Despite pending for nearly three years, this matter is far from the stage where the merits of the Plaintiff's claims can be addressed at trial. The parties have engaged in little if any pretrial discovery, and I have not invested significant resources on the matter—only some minor monitoring of the efforts of the parties to reach a settlement of the claims through a loan modification. There would be little waste of judicial resources if the Plaintiff were required to reassert her claims in a different judicial forum. Judicial economy does not weigh in favor of retaining jurisdiction over the Plaintiff's action.

### 2. Convenience to the Parties

Similarly, convenience to the parties as a factor weighs against the Plaintiff. Dismissing the adversary proceeding would result in only slight inconvenience to the parties, given the limited time expended in this case by the parties (outside of settlement efforts) and the ease of refiling the action in a non-bankruptcy judicial forum. *See* Defendant's Supplemental Memorandum at 11 (citing *Linkway Inv. Co., Inc. v. Olsen (In re Casamont Investors, Ltd.),* 196 B.R. 517, 524 (9th Cir. BAP 1996)). The Plaintiff has not submitted any evidence to establish that dismissal of the proceeding would result in undue delay. To the contrary, greater delay may attend this proceeding if I retain jurisdiction to rule on the merits; initial jurisdiction having been grounded upon the "related to" jurisdictional prong, another layer of *de novo* judicial review by the district court would be required for the entry of a final judgment unless the Defendant consents to my issuing final findings of fact and conclusions of law in this litigation.

### 3. Comity

To evaluate this factor, I am directed to consider whether the claims arising in this litigation would be adjudicated best by another court to provide the litigants with "a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Defendant emphasizes that there are no longer any bankruptcy-related issues left to decide in view of the dismissal of the underlying bankruptcy case—a point well made. *See* Defendant's Supplemental Memorandum at 12–13. That the Plaintiff's claims are predicated upon the federal non-bankruptcy TILA statute is significant. The claims are not unique to bankruptcy and a bankruptcy court is no better equipped to adjudicate them than any other judicial forum. In fact, federal district courts routinely preside over actions in which these types of claims are raised. Consequently, comity does not weigh in favor of my retaining jurisdiction.

### 4. Fairness

The final factor to consider is fairness, in this instance, to the Plaintiff if the proceeding is dismissed. This presents a more complex inquiry than the foregoing considerations because it implicates the statutes of limitations applicable to the Plaintiff's claims and the impact a dismissal would have in light of them. Looking to federal courts' analogous analysis of pendent jurisdiction, "[t]he running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction." *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 273 (1st Cir.2001) (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1175–77 (1st Cir.1995)); *see also Pharo v. Smith*, 625 F.2d 1226, 1227 (5th Cir.1980); *Hamilton*, 2009 WL 2171097, at *7. I must, accordingly, take into account the statute of limitation provisions under TILA set forth in 15 U.S.C. §§ 1635(f) and 1640(e) which directly pertain to the Plaintiff's mortgage rescission and statutory damages claims.

### a. The Rescission Limitation

■ TILA provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first. . . ." 15 U.S.C. § 1635(f). "If the borrower does not receive adequate notice of the statutory right to rescind, the rescission period is extended for three years from the date of the closing. This three-year period is a rigid deadline." *Mantz v. Wells Fargo Bank, N.A.*, Civil Action No. 09–12010–JLT, 2011 WL 196915, at *3 (D.Mass. Jan. 19, 2011) (citing 12 C.F.R. § 226.15(a)(3); 15 U.S.C. § 1635(f)). The circuit courts disagree on whether this limitations provision is satisfied if a borrower serves a notice of rescission on the lender within such period, or whether it mandates that a borrower actually commence a civil action against the lender within this period.[11] This split amongst the courts is derived in part from how they interpret the Supreme Court's opinion in *Beach v. Ocwen Fed. Bank*, which held that TILA "permits no federal right to rescind, defensively or otherwise, after the [three]-year period of [15 U.S.C.] § 1635(f) has run." 523 U.S. 410, 419, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). The First Circuit has only discussed the issue in dicta,[12] and the lower courts within this

---

**11.** *Compare Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 258 (3d Cir.2013) (holding that "the text of [15 U.S.C.] § 1635 and its implementing regulation (Regulation Z) supports the view that to timely rescind a loan agreement, an obligor need only send a valid notice of rescission"), *and Gilbert v. Residential Funding LLC*, 678 F.3d 271, 278 (4th Cir. 2012) ("[T]he three-year limitation in 15 U.S.C. § 1635 concerns the extinguishment of the right of rescission and does not require borrowers to file a claim for the invocation of that right."), *with McOmie–Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1328 (9th Cir.2012) ("[U]nder the case law of this court and the Supreme Court, rescission suits must be brought within three years from the consummation of the loan, regardless [of] whether notice of rescission is delivered within that

three-year period."), *and Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1188 (10th Cir. 2012) ("[N]otice, by itself, is not sufficient to exercise (or preserve) a consumer's right of rescission under TILA. The commencement of a lawsuit within the three-year TILA repose period was required.").

**12.** *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 211 (1st Cir.2012) (noting in dicta that a "federal TILA claim for rescission must be brought within three years of the transaction," citing 15 U.S.C. § 1635(f)); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54 (1st Cir.2002) (holding that a notice of rescission, by itself, does not void the underlying mortgage transaction).

circuit are in similar disagreement.[13]

For the purposes of determining whether to retain jurisdiction, however, I need not reach the substantive issue of the timeliness of the Plaintiff's rescission claims. My focus is limited to whether the Plaintiff would suffer unfair prejudice as a result of dismissal, that is, whether the Plaintiff would suffer unfair prejudice if this substantive issue were to be decided in a different forum. I find she would not. The Plaintiff sent the Notice of Rescission within three years of the date of the Mortgage Transaction but did not file this adversary proceeding until after the three-year period had run. Regardless of the particular judicial forum in which the matter is heard, the risk to the Plaintiff on the rescission limitations issue remains unaltered and dismissal of this proceeding does not result in prejudice to the Plaintiff. The limitation period either expired prior to the initiation of this adversary proceeding or was satisfied pre-bankruptcy, depending on which side of this decisional divide a court lays.

### b. The Statutory Damages Limitation

 TILA also affords consumer borrowers a statutory right to damages for violations of 15 U.S.C. § 1635. *See* 15 U.S.C. § 1640(a). "Regarding the Plaintiff's statutory right to seek damages, [15 U.S.C. §] 1640(e) sets a one year period following the applicable loan transactions." *Vasquez v. Countrywide Home Loans, Inc. (In re Vasquez)*, Adversary No. 10–1020, 2011 WL 2671301, at *1 (Bankr.D.R.I. July 7, 2011); *see also Belini v. Wash. Mut.*

*Bank, FA*, 412 F.3d 17, 25 (1st Cir.2005) (quoting 15 U.S.C. § 1640(e)) ("The statute of limitations for bringing an action under [15 U.S.C. §] 1640 'is one year from the date of the occurrence of the violation.' "). The Plaintiff is correct that the Defendant's refusal to honor the Notice of Rescission constitutes an independent TILA violation, triggering anew the one-year period in which to commence an action under 15 U.S.C. § 1640(e). *See Belini*, 412 F.3d at 26 ("The 'date of the occurrence of the violation,' here, is at the earliest the [sic] date that [the lender] received the [plaintiffs'] notice of rescission; in truth, the date of the occurrence is likely twenty days later, when [the lender's] time for responding to that notice expired.").

The Plaintiff alleges, and the Defendant admits, that the Defendant effectively rejected the Notice of Rescission by June 30, 2010. Accepting this timeline for the narrow purpose of evaluating the fairness element, the limitations period in which to assert the statutory damages claims had not expired when the Complaint was filed but it will be time-barred if this adversary proceeding is dismissed.

 Notwithstanding, I am not persuaded to retain jurisdiction based on this alone, the only one of the four factors that to some degree favors the Plaintiff. "[A]lthough the potential statute of limitations bar is a necessary consideration, it is not the only consideration. It is not the function of a federal court to rescue a party from the danger of limitation by permitting the litigation of inappropriate matters

---

13. *Compare U.S. Bank Nat'l Ass'n v. James,* Civil No. 09–84–P–S, 2009 WL 2448578, at *7 (D.Me. Aug. 9, 2009) ("[I]t is the exercise of the right of rescission that is limited to three years after the relevant date.... The operative act in exercising the right of rescission is notice to the creditor, not filing an action in court."), *with Mantz,* 2011 WL 196915, at *4 (finding plaintiff's claim time-barred as it was filed two days after his rescission right expired).

in federal court." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 1000 (11th Cir.1983). The statutory damages afforded the Plaintiff under TILA at most do not exceed $2,000,[14] a *de minimus* sum. Such an inconsequential sum, absent other persuasive reasons, should not become the proverbial "tail that wags the dog" on this retention issue.

Nor is the Plaintiff deprived of her ability to pursue the pivotal target of her claims—rescission of the entire loan transaction and discharge of the mortgage against her home, along with attorney's fees incurred. *See Vasquez,* 2011 WL 2671301, at *1 ("If the Debtor prevails in his rescission claim under [15 U.S.C.] § 1635, the right to seek attorney's fees for relief under that section is not limited by the one year limitation period."). By the Plaintiff's own admissions in her status report, at a conference held on December 2, 2013, and in her Supplemental Memorandum, her claim for rescission, or alternatively the satisfactory modification of the mortgage loan, are her utmost priorities in this adversary proceeding.[15] The potential loss of the inconsequential statutory damages claims does not warrant my exercising discretion to retain jurisdiction. It is not sufficiently compelling to overcome the general rule that once "related to" jurisdiction no longer exists, a bankruptcy court should dismiss the proceeding.

## IV. CONCLUSION

This Court ceased to have jurisdiction over the Plaintiff's claims upon the Chapter 7 Trustee's abandonment of those claims and the closing of the underlying bankruptcy case, after which there no longer was a bankruptcy estate. Retention of jurisdiction would be inappropriate based on the procedural history and particular facts of this proceeding. The Defendant's Motion to Dismiss is GRANTED.

---

14. While the amount the Plaintiff seeks is $2,000, in actuality she may be entitled to only $1,000, which appears to have been the statutory cap in effect at the time of the Mortgage Transaction. *Compare* 15 U.S.C. § 1640(a)(2)(A)(i)-(ii), *with Hummel v. Hall,* 868 F.Supp.2d 543, 550 (W.D.Va.2012) (explaining that the Dodd–Frank Act increasing the statutory cap from $1,000 to $2,000 was not enacted until July 21, 2010, and the borrower, whose consumer credit transaction occurred prior to that date, was only entitled to a maximum of $1,000 in statutory damages). Here, both the date of the Mortgage Transaction (July 24, 2007) and the Defendant's refus-

al to honor the Notice of Rescission (June 30, 2010) occurred before the Dodd–Frank Act became effective.

15. *See, e.g.,* Plaintiff's Supplemental Memorandum at 2 (requesting the Court defer its consideration of the Motion to Dismiss in light of the trial modification plan, and advising the Court that she would "dismiss [the adversary proceeding] unconditionally if the trial modification [was] made permanent under the same payment terms, without regard to any attorney fees").